IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES JONES, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-3929-L |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST | § | |
| COMPANY, AS TRUSTEE FOR MORGAN | § | |
| STANLEY CAPITAL I INC., TRUST 2006- | § | |
| HE2 and AMERICA'S SERVICING | § | |
| COMPANY, | § | |
| | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated February 19, 2013, this case has been referred for

pretrial management.  Before the Court for recommendation is *Defendants Wells Fargo Bank, N.A.*

*and Deutsche Bank National Trust Company's Motion to Dismiss Pursuant to Rule 12(b)(6)* (doc.

5), filed November 5, 2012.  Based on the relevant filings and applicable law, the motion should be

**GRANTED.**

## I.  BACKGROUND

This case involves attempted foreclosure of real property located at 4041 Parker Lane,

Midlothian, Texas 76065 (the Property).  (doc. 1-6 at 2.)[1]  On September 4, 2012, Charles Jones and

Katherine Jones (Plaintiffs) filed suit against America's Servicing Company, a division of Wells

Fargo Bank, N.A. (WFB) and Deutsche Bank National Trust Company, as Trustee for Morgan

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the
page numbers at the bottom of each filing.

Stanley Capital I Inc. Trust 2006-HE2 (Deutsche) (collectively, Defendants) in the 40th Judicial District Court of Ellis County, Texas.  (*Id*. at 1.)  They asserted claims for quiet title and declaratory judgment, and sought an order quieting their title, attorney's fees, pre- and post-judgment interest, and the refund "of any wrongfully or improperly collected fees and payments [they] [made] to Defendants."  (*Id.* at 7-10.)

In their state court petition, Plaintiffs allege that they purchased the Property on or about December 23, 2005, with a promissory note and a deed of trust securing the note.  (*Id.* at 2.)  Both the note and deed of trust named WMC Mortgage Corporation (WMC) as the "Lender."  (*Id.*)  On September 7, 2011, Mortgage Electronic Registration Systems, Inc. (MERS), as "nominee" for WMC, allegedly assigned the note and deed of trust to Deutsche.  (*Id.*)  The assignment was recorded with the Ellis County Clerk.  (*Id.*)  A second assignment of the note and deed of trust from MERS to Deutsche was allegedly recorded on October 4, 2011.  (*Id.*)

Plaintiffs claim that MERS could not assign any rights in the note or deed of trust to Deutsche because it was not a party to the note and never had a beneficial interest in it, and because Ellis County property records do not evidence an assignment of the note from WMC to MERS.  (*Id.* at 2–3.)  They allege that because the note and deed of trust are "inseparable," MERS's assignment "only transferred the deed of trust and not the note" to Deutsche, and the "note and deed of trust separated their paths" at that point.  (*Id.* at 3.)  Moreover, because MERS "had no ownership interest" in the note or deed of trust that it could assign, Deutsche "acquired no interest" in those documents and therefore lacked authority to "declare a default, accelerate the debt, appoint a substitute trustee, or conduct a [foreclosure] sale."  (*Id.*)

Plaintiffs contend that the note was pooled with other notes, transferred into a trust, and

2

converted into saleable "mortgage-backed securities" pursuant to a Pooling and Servicing Agreement (PSA) for the purpose of selling those securities "on the open market." (*Id.* at 4.) In addition to providing how the trust would be set up and managed, the PSA determined how and when "the trust [was] to acquire its assets." (*Id.*) Plaintiffs aver that "these asset-backed trusts are treated as a Real Estate Mortgage Investment Conduit" (REMIC) and are given "beneficial tax treatment" under the Internal Revenue Code, so long as they "acquire [their] assets by the close of the third month after the [trust's] startup date." (*Id.* at 4–5.)

The PSA purportedly established the trust under New York trust law and set the trusts' "closing date", i.e., the date by which all of its assets were to be acquired, as April 28, 2006. (*Id.* at 5.) The PSA also "define[d] the rights, duties, and obligations of the parties to [it]" and "was filed with the Securities and Exchange Commission." (*Id.*) Plaintiffs contend that because "the transfer did not happen until five years after the [trust's] closing date," that is, until September 7 or October 4, 2011, the trust's "acquisition [of the note] was not in compliance with the requirements of the PSA." (*Id.* at 6.) Therefore, WMC, "or ... its agent MERS, still legally owned and held the Note." (*Id.* at 6–7.) The transfer also violated the PSA because "[n]o depositor was identified in the [Ellis] County property records," and this contravened "the [PSA's] chain of title requirements." (*Id.* at 6.) The transfer was void under the PSA and New York trust law. (*Id.* at 7.) Consequently, neither the trust nor Deutsche, as trustee for the trust, "acquired [any] interests in the [Property]," and they lacked authority to "declare a default, accelerate the debt, appoint a substitute trustee, or attempt to conduct a substitute trustee's sale." (*Id.* at 6–7.) Plaintiffs also allege that the securitization "subjected [them] to risks, abuses, [and] prejudice," and made it impossible to properly discharge their obligations under the note. (*Id.* at 7.)

WFB purportedly represented to be the servicer of Plaintiffs' mortgage and took actions in

that capacity, including "collecting payments on the Note, accelerat[ing] the Note, and conducting

a foreclosure sale of the [Property]." (*Id.*) According to Plaintiffs, WFB had no authority to engage

in those actions because its authority would have derived from Deutsche, but Deutsche had no

authority given that MERS's assignment was ineffective. (*Id.*) They therefore conclude that WFB

"wrongfully accepted [their] payments" or "wrongfully represented that it was entitled to collect

[their] payments in connection with the Note." (*Id.*)

On September 4, 2012, the state court issued a temporary restraining order restraining

Defendants and their agents from foreclosing on the Property. (*See* doc. 1-10 at 1–3.) On

September 28, 2012, Defendants removed the action to the U.S. District Court for the Northern

District of Texas asserting diversity jurisdiction under 28 U.S.C. § 1332. (*See* doc. 1 at 3.) On

November 5, 2012, Defendants moved to dismiss Plaintiffs' complaint. (doc. 5.) With a timely-

filed response (doc. 13) and reply (doc. 14), the motion is now ripe for recommendation.

## II. RULE 12(b)(6) MOTION

Defendants move to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state a

claim upon which relief can be granted. (*See* doc. 5.)

## A.   Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be

granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely

granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court

cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker

v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not

mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556, U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

**B.        Plaintiffs' Standing to Challenge the Assignments**

Defendants contend that "Plaintiffs' entire suit is premised on their allegation that the Note and Deed of Trust were not properly assigned to [Deutsche] and/or that the Trust did not acquire the

Note within the requirements of [the PSA]." (doc. 5 at 9.)  They argue that Plaintiffs' complaint is subject to dismissal because Plaintiffs "lack standing"[2] to challenge the assignment of the note and deed of trust from MERS to Deutsche and from an unspecified party into a securitization trust since they were not parties to those assignments or to the PSA.  (*Id.* at 9–10.)

Numerous district courts in Texas have held that "borrowers do not have standing to challenge the assignments of their mortgages because they are not parties to those assignments." *Kidd v. Fed. Nat. Mortg. Ass'n*, No. 3:12-CV-1733-B, 2012 WL 4900962, at *2 (N.D. Tex. Oct. 15, 2012) (collecting cases); *see also Abruzzo v. PNC Bank, N.A.*, No. 4:11-CV-735-Y, 2012 WL 3200871, at *2 (N.D. Tex. July 30, 2012) (holding that the "Plaintiffs [did] not have standing to ... challenge" the assignment of their mortgage from a securitization trust to the defendant, which allegedly violated the governing PSA, "because they were not parties" to the PSA).

Citing to Texas law, however, some district courts have recognized two exceptions: (1) the obligor of an assigned "claim may defend [a] suit brought thereon on any ground which renders the assignment void, but ... not ... voidable,"[3] and (2) "under very limited circumstances, ... a defendant

---

[2] "Standing has both constitutional and prudential aspects." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 460 n.9 (5th Cir. 2001) (citation omitted).  The argument that non-parties lack standing to challenge an assignment of a deed or note implicates prudential standing.  Prudential standing encompasses "[j]udicially created limits" that concern whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).  In essence, prudential standing "goes to whether the law on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Rodriguez v. Bank of Am., N.A.*, No. SA-12-CV-00905-DAE, 2013 WL 1773670, at *4 (W.D. Tex. Apr. 25, 2013) (internal quotations omitted).  "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 (5th Cir. 2011).

[3] "Examples of 'voidable' defenses include the statute of frauds, ... fraud in the inducement, ... lack of capacity as a minor, ... and mutual mistake." *Miller v. Homecomings Fin., LLC*, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012); *see also* Tex. Bus. & Com. Code Ann. § 3.202(a) (West 2002) (listing voidable defenses against the enforcement of a negotiable instrument).

sued on a negotiable instrument [may] assert defenses and claims held by others." *Kramer v. Fannie Mae*, No. A–12–CA–276–SS, 2012 WL 3027990, at \*4–5 (W.D. Tex. May 15, 2012) (citing to *Tri–Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ) and Tex. Bus. & Com. Code § 3.305(c)); *see also Rodriguez*, 2013 WL 1773670, at \*5; *Puente v. CitiMortgage, Inc*., No. 3:11-CV-2509-N, 2012 WL 4335997, at \*6 (N.D. Tex. Aug. 29, 2012); *Miller*, 2012 WL 3206237, at \*5.

A debtor can challenge a void assignment "because a void assignment would not pass title, and the debtor has an interest to insure [*sic*] himself that he will not have to pay the same claim twice." *Washington v. JP Morgan Chase*, No. SA-11-CV-763-XR, 2013 WL 636054, at \*8 (W.D. Tex. Feb. 20, 2013) (citation omitted); *accord Tri–Cities Const., Inc.*, 523 S.W.2d at 430. With respect to the assignment of a mortgage, "[a] void contract of assignment confers no right to foreclose under the deed on the purported assignee while a voidable contract transfers the deed to the assignee—including the rights contained in it—subject to the rights of the assignor to set it aside upon proof [that] the contract was executed improperly."[4] *Puente*, 2012 WL 4335997, at \*6 n. 14 (citing to *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 674 (Tex. 1942)); *see also Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.) (distinguishing between a void and a voidable assignment). In *Kramer*, the court held that the plaintiff could not challenge the assignment of the deed of trust because neither exception applied, given that in foreclosing on his property, the "Defendants did not sue [the plaintiff] at all, and, even if they had, their suit would have been on the deed of trust, not the ... promissory note … [and] there

---

[4] "This rule accords with [the] principle of contract law" that a "void contract is 'invalid or unlawful from its inception' and therefore cannot be enforced." *Rodriguez*, 2013 WL 1773670, at \*5 (citing 17A C.J.S. Contracts § 169).

[was] no suggestion [he] [was] being put in a position where he [would] have to pay the same claim twice." *Kramer*, 2012 WL 3027990, at \*5.

### 1.    *Standing to Challenge MERS's Assignment to Deutsche*

Plaintiffs' complaint does not allege that the assignment from MERS to Deutsche was either void or voidable, only that the assignment transferred the deed of trust but not the note because MERS had no rights in the note that it could assign.  (*See* doc. 1-6 at 2–3.) They explain in their response brief that MERS's assignment was "void" "because MERS had no interest [in the note] that it could transfer, and because the [a]ssignment was not a proper negotiation of a negotiable instrument" under the Texas Uniform Commercial Code (UCC).  (doc. 13 at 7.) Consequently, they "face the potential of double liability from [Deutsche] and from [WMC]."  (*Id.*)

While Plaintiffs' response contends they face the "potential" of multiple liabilities, as in *Kramer*, they do not allege that either Defendants or WMC have actually sued them on the note or put them in a position where they will have to pay the same claim twice.  *See Kramer*, 2012 WL 3027990, at \*5.  Morever, as discussed more fully below, in Texas, "the authority to conduct a foreclosure ... is [determined] by an entity's relationship to the deed of trust," which is a contract, "rather than the associated note."  *See id.* at \*7.  Where "MERS is a beneficiary and nominee for both the originating lender and its successors and assigns," and is given the power of sale under the deed of trust, "then MERS has the power of sale."  *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at \*2 (N.D. Tex. July 12, 2012) (citations omitted).  MERS also has the authority to transfer the power of sale by assigning the deed of trust.  *Id.* at \*3; *accord Lamb v. Wells Fargo Bank*, NA, 3:12-CV-00680-L, 2012 WL 1888152, at \*5 (N.D. Tex. May 24, 2012) (holding that because the deed of trust granted MERS the right to sell and foreclose on the property

8

at issue, "MERS had the authority to transfer or assign the Note and Deed of Trust to [the defendant]").

Courts in this Circuit have also held that the transfer of the note or deed of trust automatically transfers the other because they "must be read ... and construed together as a single instrument." *Warren v. Bank of Am., N.A.*, No. 3:11-CV-3603-M, 2012 WL 3020075, at *4 (N.D. Tex. June 19, 2012), *recommendation adopted*, 2012 WL 3024746 (N.D. Tex. July 24, 2012); *Islamic Ass'n of DeSoto, Texas, Inc. v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.) ("[T]he transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions.") (internal quotations omitted); *Kramer*, 2012 WL 3027990, at *5 (same) (listing cases). Accordingly, for the power of sale to be properly assigned, the assigning party's relationship to the promissory note is irrelevant, "[a]ll that matters ... is that the mortgage [i.e, the deed of trust] be properly assigned." *Martins v. BAC Home Loans Servicing, L.P.*, No. 12-20559, 2013 WL 1777487, at *2 (5th Cir. Apr. 26, 2013).

Here, Plaintiffs assert that MERS assigned the note and deed of trust to Deutsche on September 7 and October 4, 2011 "as Nominee for [WMC]." (doc. 1-6 at 2.) In their response, they reaffirm that MERS assigned the deed of trust to Deutsche in September 2011 and recorded that assignment with the Ellis County Clerk. (doc. 13 at 9–10.) According to Plaintiffs' own complaint and the relevant Texas law, their conclusory allegations that MERS could not assign the note because it lacked an interest in it fail to raise a reasonable inference that its assignment of their mortgage to Deutsche was void. *See Martins*, 2013 WL 1777487, at *2; *Warren*, 2012 WL 3020075, at *4. They therefore fail to raise a reasonable inference that they have standing to contest

that assignment.  *See Asonibe v. Flagstar Bank, FSB*, No. 3:12-CV-2113-MBH, 2013 WL 1828842,

at *4 (N.D. Tex. Apr. 5, 2013), *recommendation adopted*, 2013 WL 1831747 (N.D. Tex. Apr. 30,

2013) (holding that the plaintiffs' allegations that MERS could not assign their mortgage because

it "had no 'beneficial interests in the promissory note' ... and because there was no recorded

assignment of the note from [the original lender] to MERS" failed to show they had standing to

challenge that assignment). To the extent their quiet title claim, declaratory judgment action, and

requests for miscellaneous relief are based on their challenge to MERS's assignment, these are

subject to dismissal for failure to state a claim.  *See id.*; *see also Kidd*, 2012 WL 4900962, at *2

(dismissing quiet title claim and declaratory judgment action where the plaintiff's theories were

"based entirely on assignments and agreements to which [she] was not a party" and where she "[had]

not ... alleged that multiple parties ha[d] attempted or [would] attempt to collect from [her]").

### 2.   *Standing to Challenge the Assignment of the Mortgage into the Trust*

Plaintiffs also contend that the assignment of their mortgage into a securitization trust was

void under New York trust law and under the terms of the PSA because it occurred over five years

after the trust's closing date[5] and because "[n]o depositor was identified in the [Ellis] County

property records."  (doc. 1-6 at 5–7.)  They claim the securitization of the debt subjected them to

"risks, abuses, [and] prejudice."  (*Id.* at 7.)  Moreover, "[t]he lack of certainty as to the transfer of

the Note ... potentially subject[ed] [them] to multiple and unpredictable recoveries or attempts to

recover against the [Property]."  (*Id.* at 9.)

---

[5]  Defendants argue that "Plaintiffs' claims *solely rely* on the date of when the assignment of the deed of trust was prepared and transferred."  (doc. 5 at 13) (emphasis added).  They claim that date is not "determinative of when the Defendants had authority to enforce the Note and Deed of Trust."  (*Id.*)  Nevertheless, while Plaintiffs allege that the assignment into the securitization trust was untimely, they also argue that MERS's assignment to Deutsche was ineffective because MERS could not assign any interests in the note.  (*See* doc. 1-6 at 2–7.)

As with MERS's assignment, Plaintiffs do not bring forth any facts showing that the trust has sued them on the note or put them in a position where they will have to pay the same claim twice. *See Kramer*, 2012 WL 3027990, at *5. They also fail to explain or cite to legal authority explaining how or why an untimely transfer and the absence of a filing with the Ellis County Clerk identifying a "depositor" would void the alleged assignment. In their response brief, they assert that the "transactions" (i.e., the assignments of their mortgage into the trust) "exceeded the Trust's authority" because they were untimely and that the transactions "never happened [or] were void transaction[s]." (doc. 13 at 8, 11.) Without citing to specific provisions of the PSA and to relevant legal authority, Plaintiffs fail to "nudge[] [these] claims from conceivable to plausible." *See Twombly*, 550 U.S. at 570; *see also Washington*, 2013 WL 636054, at *8–9 (holding that while the plaintiff's allegation that the assignment document was "forged" raised a reasonable inference that the assignment was "void", his contention that his loan was transferred into a securitization trust after the trust's closing date in violation of a PSA was insufficient for the Court to find that the assignment was void or even merely voidable; explaining that the "Plaintiff's statement that the assignment would be 'invalid because it [did] not comply with the PSA' [was] conclusory"); *Metcalf v. Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *4 (N.D. Tex. June 26, 2012) (finding that "it [was] unclear under Texas law [whether] the assignment" of the plaintiff's mortgage into a New York securitization trust "[became] *invalid* merely because it conflict[ed] with the PSA, was made after the Trust was closed, or [because] the trust fail[ed] to qualify for REMIC status") (emphasis in original).[6]

Even if accepted as true for purposes of this motion, Plaintiffs' allegations regarding the

---

[6] The court in *Washington* also noted that "a transfer in violation of the [PSA] would [likely] be voidable rather than void" given that "[a] void contract never comes into being." *Washington*, 2013 WL 636054, at *9 n. 38.

assignment of their mortgage into a securitization trust fail to raise a reasonable inference that the assignment was void and that they have standing to challenge it.  All of their claims are subject to dismissal to the extent they are based on these allegations.  *See Abruzzo*, 2012 WL 3200871, at *2 (holding that the plaintiffs had "failed to plead a plausible [quiet title] claim" based on their unsupported challenge of the assignment of their mortgage from a securitization trust to the defendant in violation of the governing PSA); *see also Asonibe*, 2013 WL 1828842, at *4.

**C.    Defendants' Authority to Foreclose**

According to Defendants, "Plaintiffs' claims solely rely on the date of when the assignment[s] of the Deed of Trust [were] prepared and transferred." (doc. 5 at 13.)  They contend that Plaintiffs' claims are also based on "the[ir] misplaced allegation that Defendants must produce the Note and prove up chain of title prior to foreclosure." (doc. 14 at 4.)  They aver Plaintiffs' allegation is misplaced because Deutsche, as the "mortgagee", and WFB, as the "mortgage servicer", were not required "to produce proof of ownership of the original note or deed of trust prior to foreclosing on the Property." (*Id.*)

Plaintiffs allege that Deutsche did not acquire any interest in the note via MERS's assignment because MERS had no interest in the note that it could assign.  (doc. 1-6 at 2–3.) Deutsche therefore "had no right to declare a default, accelerate the debt, appoint a substitute trustee, and/or conduct a foreclosure sale." (*Id.* at 3.) They contend that WFB could not collect payments on the note, accelerate the note, or initiate foreclosure proceedings because its authority as mortgage servicer derived from Deutsche's authority, but Deutsche had no authority due to MERS's ineffective assignment. (*Id.* at 6.)  They add in their response brief that MERS's assignment was void because it was not a negotiation under the UCC. (doc. 13 at 2, 7.)  MERS's void assignment

created "a significant break in the chain of title between [WMC] and [Deutsche]," and as a result, Defendants "could not foreclose" without first proving their interest in the note or deed of trust. (*Id.* at 2.) Lastly, they claim that the trust never acquired the note because the assignment contravened the PSA and New York trust law. (doc. 1-3 at 7.) As a result, neither the trust nor Deutsche could "declare a default, accelerate the debt, appoint a substitute trustee, or ... conduct a substitute trustee's sale." These allegations appear to be the basis for their quiet title claim and requests for declaratory and injunctive relief. (*See* docs. 1-3 at 2–10; 13 at 2, 9–18.)

Plaintiffs' allegations that Defendants could not foreclose because they had no interest in the note and because MERS's assignment of the note was not a negotiation under the UCC implicate the "show-me-the-note" theory. *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *recommendation adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012). "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (citation and internal quotation marks omitted). The theory has been repeatedly rejected in this Circuit as having no merit. *See Bennett*, 2012 WL 2864751, at *3; *Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (collecting cases).

"Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Martins*, 2013 WL 1777487, at *2 (quoting *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011)). Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth v. BAC Home Loans Servicing, L.P.*,

13

No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.).   When the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument."[7]  *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).  By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note."  *Reardean*, 2011 WL 3268307, at *3; *accord Martins*, 2013 WL 1777487, at *2 ("[F]oreclosure ... enforces a deed of trust, rather than the underlying note, and can be accomplished without judicial supervision.").

"The Texas Property Code provides that either a mortgagee or mortgage servicer may administer a deed of trust foreclosure without production of the original note."  *Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1, n. 1 (5th Cir. Mar. 28, 2011) (per curiam) (citing to Tex. Prop. Code §§ 51.0002, 51.0025); *Bennett*, 2012 WL 2864751, at *3.  The Code defines mortgagee as "the grantee, beneficiary, owner, or holder of a security instrument," or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  Tex. Prop. Code Ann.  § 51.0001(4)(A),(C) (West 2007).  A "mortgage servicer" is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument."  *Id.* § 51.0001(3). rig

A mortgage servicer may foreclose on behalf of the mortgagee if the parties enter into an agreement and provide the mortgagor with certain disclosures.  *See* Tex. Prop. Code § 51.0025.  As courts have noted, however, § 51.0025 does "not require the mortgage servicer to be the 'holder' of the Note [or] Deed of Trust or to produce the oinal loan documents."  *Sawyer v. Mortgage Elec.*

---

[7]  The UCC governs the procedure for establishing "holder" status.  *See* Tex. Bus. & Com. Code Ann. §§ 3.201, 3.203,and 3.204 (West 2002) (providing the requirements for the negotiation, transfer, and endorsement of negotiable instruments).

*Registration Sys., Inc.*, No. 3-09-CV2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010), *recommendation adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *see also Darocy v. Chase Home Fin., LLC*, No. 3:10-CV-1259-L, 2012 WL 840909, at *10 (N.D. Tex. Mar. 9, 2012) (explaining that § 51.0025 "contemplates that someone other than the holder of the original [loan documents] may lawfully foreclose on the security interest").

Here, Plaintiffs aver that MERS, as WMC's "nominee," assigned the note and deed of trust to Deutsche in September and October 2011.  (docs. 1-3 at 2; 13 at 2, 7.)  Upon the assignment(s), Deutsche became the mortgagee because it was "the last person to whom the security interest ha[d] been assigned of record."  *See* Tex. Prop. Code  § 51.0001(4)(C).  As mortgagee, Deutsche acquired all of WMC's rights, including the right to foreclose upon Plaintiffs' default.  *See Martins*, 2013 WL 1777487, at *2; *Asonibe*, 2013 WL 1828842, at *6 ("As the new mortgagee, Defendant could foreclose on the Property upon Plaintiffs' default without having to produce the note or deed of trust.").  Deutsche could also authorize WFB to service Plaintiffs' mortgage and foreclose on the Property on its behalf, so long as the parties established a servicing agreement and gave Plaintiffs proper notice.  *See* Tex. Prop. Code § 51.0025.

In sum, Plaintiffs' allegation that Defendants could not foreclose because they had no interest in the note cannot support a claim against them as a matter of law.  *See Islamic Ass'n*, 2012 WL 2196040, at *3; *see also Martins*, 2013 WL 1777487, at *2.  To the extent Plaintiffs premise their claims for relief on these allegations, the claims fail and are subject to dismissal for failure to state a claim.  *See Bennett*, 2012 WL 2864751, at *3 (dismissing wrongful foreclosure claim that was based on the plaintiff's unsupported allegation that the defendants "had no right to foreclose or provide a notice of sale"); *compare Shelton v. Flagstar Bank, F.S.B.*, No. CIV.A. H-11-3805, 2012

WL 1231756, at *2 (S.D. Tex. Apr. 12, 2012) (denying the defendant's motion to dismiss where the plaintiff alleged that the defendant lacked authority to foreclose because it was neither the mortgagee nor the mortgage servicer and where the defendant was "merely one of three possible contenders for the status of current mortgagee," "the attachments to [the plaintiff's] original petition indicate[d] significant confusion regarding the identity of the current mortgagee," and the identity of "the current mortgage servicer [was] likewise ... in doubt").

### D.   Suit to Quiet Title

Defendants contend that "Plaintiffs' suit to quiet title should be dismissed because Plaintiffs have failed to assert that their title is superior to Defendants' title."  (doc. 5 at 13.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted).  To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable.  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)).  The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67 (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont

2000, pet. denied)).  Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title.  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Here, Plaintiffs claim they "are the owners of the [Property]."  (docs. 1-6 at 2; 13 at 1.)  The "lack of certainty as to the transfer of the Note, if any, potentially subjects [them] to multiple and unpredictable recoveries or attempts to recover against the [Property]," and this risk of multiple liabilties "constitute[s] a cloud on [their] title."  (doc. 1-6 at 9.)  To establish their superior title, Plaintiffs question whether Deutsche, and by implication WFB, acquired WMC's interest in the Property via MERS's assignment.  (*See* docs. 1-6 at 9; 13 at 16–18.)  They argue that MERS could not assign the note or deed of trust to Deutsche because MERS was not a party to, and never held a beneficial interest, in the note, and there is no evidence in the Ellis County property records of an assignment of the note from WMC to MERS.  (doc. 1-3 at 2–3.)  Deutsche therefore acquired no interest in Plaintiffs' loan and does not have superior title to the Property.  (docs. 1-3 at 2–3; 13 at 8.)  Plaintiffs conclude that because WFB "derived" its interests from Deutsche, and Deutsche had no interest in the Property, WFB also lacked an interest in the Property.  (*See* doc. 1-3 at 6.)

As previously discussed, Plaintiffs' allegations regarding MERS's assignment cannot support a claim for relief.  Given Plaintiffs' statement that MERS acted as WMC's "nominee" when it assigned the deed of trust to Deutsche, they fail to raise a reasonable inference that its assignment was ineffective.  *See Willeford*, 2012 WL 2864499, at *2–3.  Because a transfer of the deed of trust automatically transfers the note, upon the assignment, Deutsche became the mortgagee and acquired all of WMC's interests in the Property.  *See Warren*, 2012 WL 3020075, at *4.  Lastly, WFB, as the servicer of Plaintiffs' mortgage, could enforce Deutsche's interests if they set up an agreement and

17

gave Plaintiffs proper notice.  *See* Tex. Prop. Code § 51.0025; *Darocy*, 2012 WL 840909, at *10.

Since Plaintiffs base their quiet title claim on invalid legal theories and fail to sufficiently plead they have superior title to the Property vis-à-vis Defendants, this claim should be dismissed for failure to state a claim.  *See Summers v. PennyMac Corp.*, No. 3:12-CV-01235-L, 2012 WL 5944943, at *3 (N.D. Tex. Nov. 28, 2012) (holding that the plaintiffs' quiet title claim "fail[ed] as a matter of law" because they "[did] not allege facts which, if proved, would establish their superior title; nor [did] they allege that they are current on their mortgage payments ... [i]nstead, they challenge[d] [the defendant's] title by arguing that [it] lack[ed] authority to enforce the Note at issue and foreclose on the property").[8]

## E.    **Declaratory Judgment Action**

Defendants next contend that Plaintiffs' request for declaratory relief cannot survive without a viable cause of action.  (doc. 5 at 15.)

Plaintiffs seek declaratory relief presumably under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  (*See* doc. 1-6 at 7–9.) "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one.  *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012).  In light of removal, the action may be construed

---

[8]  In their response to Defendants' motion, Plaintiffs assert a trespass to try title claim.  (*See* doc. 13 at 16.) Because Plaintiffs assert this claim for the first time in their response, it may not be considered.  *See Renfrow v. CTX Mortg. Co., LLC*, No. 3:11-CV-3132-L, 2012 WL 3582752, at *4 (N.D. Tex. Aug. 20, 2012) (explaining that "[a]llegations outside of the Petition may not be considered by the court" in determining a Rule 12(b)(6) motion) (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir.1991), *cert. denied*, 502 U.S. 1030 (1992)).  Even if considered, this claim fails and should be dismissed for the same reasons as Plaintiffs' quiet title claim.  *See Chance v. Aurora Loan Servs., L.L.C.*, No. 3:11-CV-1237-BH, 2012 WL 912939, at *7 (N.D. Tex. Mar. 19, 2012) (dismissing the plaintiff's quiet title and trespass to try title claims for failure to state a claim because, "[o]ther than her vague and conclusory allegations, [she] failed to allege any facts giving rise to a reasonable inference that she ha[d] superior title to the property or that [the] Defendants' claim to the property [was] invalid or unenforceable").

as one brought under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202. *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal [DJA].").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201 (West 2010). Notably, the Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted). It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment. *Id.*

Here, Plaintiffs seek numerous declarations, including that: (1) "the Trust never acquired the Note or Trust Deed," and Deutsche therefore "could not declare a default, accelerate the debt, appoint a substitute trustee, or attempt to conduct a substitute trustee's sale"; (2) the securitization of the note subjected them "to risks, abuses, [and] prejudice" and "rendered [it] impossible" to properly "discharge [their] obligations on the Note"; and (3) "Defendants are not, and never have been, the owner[s]/holder[s] of the Note." (doc. 1-3 at 7–11.) The requested declarations are based on Plaintiffs' ill-founded theories regarding MERS's assignment and the securitization of the loan. (*See id.*) Given Plaintiffs' failure to state a viable claim against Defendants or show that a genuine

controversy exists between the parties, their declaratory judgment action should be dismissed.  *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *5–6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

## F.     Injunctive Relief

Defendants seek to dismiss Plaintiffs' request for injunctive relief on grounds that they "have not shown a substantial likelihood of ultimate success on the merits" because they fail to state a viable claim for relief.  (doc. 5 at 15.)

"To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'"  *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Here, Plaintiffs seek a court order "quieting" their title to the Property.  (doc. 1-6 at 9.)  Because their only substantive claim is subject to dismissal on the merits, they cannot establish any likelihood of success on the merits.  *See Jackson*, 2011 WL 3874860, at *3.  Accordingly, Plaintiffs' request for injunctive relief should be denied.

## G.     Request for Attorney's Fees, Court Costs, and Miscellaneous Relief

Defendants last move to dismiss Plaintiffs' request for attorney's fees, court costs, and miscellaneous relief, arguing that "[b]ecause Plaintiffs have no viable causes of action and are not entitled to recover damages, they cannot recover attorney's fees."  (doc. 5 at 15–16.)

Plaintiffs seek attorney's fees, court costs, pre- and post-judgment interest, and the

20

reimbursement of "any wrongfully or improperly collected fees and payments." (doc. 1-6 at 10–11.)

"As a general rule, attorney's fees are not recoverable in Texas unless provided for by contract or by statute." *Lopez v. Los Cielos Homeowners Ass'n, Inc.*, No. 11-11-00102-CV, 2013 WL 1636433, at *2 (Tex. App.—Eastland Apr. 11, 2013, no pet.) (citing *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992)). The Texas Civil Practice and Remedies Code "provides that reasonable attorney's fees may be recovered in certain types of suits, such as suits on a sworn account or a written contract."[9] *Id.* (citing Tex. Civ. Prac. & Rem. Code § 38.001). To recover attorney's fees under § 38.001, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Bennigan's Franchising Co., LLC v. Team Irish, Inc.*, No. 3:11-CV-0364-D, 2011 WL 3903068, at *3 (N.D. Tex. Sept. 6, 2011) (Fitzwater, C.J.) (citing *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997)). Because no action listed in § 38.001 applies in this case and Plaintiffs fail to plead a viable cause of action, their request for attorney's fees and miscellaneous relief should be dismissed. *See* Tex. Civ. Prac. & Rem. Code § 38.001; *Franklin v. BAC Home Loans Servicing, LP*, No. 3:10-CV-1174-M, 2012 WL 2679496, at *13 (N.D. Tex. June 6, 2012), *recommendation adopted*, 2012 WL 2688809 (N.D. Tex. July 5, 2012) (dismissing request for attorney's fees because the plaintiff's claims were dismissed).

---

[9] The qualifying causes of action are for:
(1) rendered services;
(2) performed labor;
(3) furnished material;
(4) freight or express overcharges;
(5) lost or damaged freight or express;
(6) killed or injured stock;
(7) a sworn account; or
(8) an oral or written contract.
Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2002)

### III.  REQUEST FOR LEAVE TO AMEND

Notwithstanding their failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, C.J.) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Here, as an alternative to dismissal of their complaint for failure to state a claim, Plaintiffs specifically request an opportunity to replead to cure any deficiencies.  (doc. 13 at 18.)

Where a responsive pleading has not been filed, Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend its pleading once as a matter of course within 21 days after serving it.  Otherwise, either the opposing party's written consent or the court's leave is required. *See* Fed. R. Civ. P. 15(a)(2).  Rule 15(a) evinces a bias in favor of amendment and requires that leave be granted "freely." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982).  A court's discretion to grant leave is therefore severely limited by the bias of Rule 15(a) favoring amendment. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Accordingly, leave to amend should not be denied unless there is a "substantial reason" to do so. *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998).  There is a substantial reason to deny leave if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999);

22

*Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Plaintiffs have not amended their complaint since filing this action. Because they request leave to amend early in the litigation and will assert no new claims, any amended complaint would not cause undue delay or prejudice to Defendants. *See Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (holding that an amended complaint causes prejudice when it asserts a new claim requiring the defendant "to reopen discovery" or prepare a new defense); *Hyde v. Hoffman-La Roche Inc.*, No. CIV A 304-CV-1473-B, 2008 WL 2923818, at *2 (N.D. Tex. July 30, 2008) (finding that the proposed amendment would "undoubtedly cause undue delay and prejudice" to the defendants because it was requested "over four years into the case"). Moreover, nothing in the record suggests bad faith or a dilatory motive on Plaintiffs' part. *See, e.g.*, *WRR Indus., Inc. v. Prologis*, No. CIV.A. 3:04-CV-2544-L, 2006 WL 1814126, at *5 (N.D. Tex. June 30, 2006) (finding that the plaintiff's proposed amendment suggested a dilatory intent and bad faith on its part because it had previously requested two extensions of time and filed its motion for leave "only after [the defendant] refused to drop its counterclaims").

Because there is no apparent substantial reason to deny leave to amend, Plaintiffs should be accorded an opportunity to amend their complaint to sufficiently state a claim for relief.

## IV.  RECOMMENDATION

If Plaintiffs do not file an amended complaint that states a claim for relief within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendants' motion to dismiss should be **GRANTED,** and all of Plaintiffs' claims against them should be dismissed with prejudice. If Plaintiffs timely file an amended complaint, however, Defendants' motion to dismiss should be **DENIED as moot,** and the action should be allowed to proceed on the

amended complaint.

**SO RECOMMENDED** on this 19th day of June, 2013.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE